566 F.2d 722
 185 U.S.App.D.C. 57
 UNION MECHLING CORPORATION et al., Petitioners,
v.
The UNITED STATES of America and the Interstate Commerce
Commission, Respondents,
Ohio Barge Line, Inc., United States Steel Corporation,
Security Barge Line, Inc., Intervenors.
 No. 76-1217.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 2, 1977.
Decided July 29, 1977.
 
 Paul M. Donovan, Washington, D. C., with whom Arthur L. Winn, Jr., Samuel H. Moerman, and J. Raymond Clark, Washington, D. C., were on the brief, for petitioners.
 Raymond Michael Ripple, Atty., I. C. C., Washington, D. C., with whom Robert S. Burk, Acting Gen. Counsel, I. C. C., and Lloyd John Osborn, Atty., Dept. of Justice, Washington, D. C., were on the brief, for respondents.
 Max O. Truitt, Jr., Washington, D. C., with whom R. Townsend Robinson, Washington, D. C., and Wayne L. Emery, Pittsburgh, Pa., were on the brief, for intervenor U. S. Steel Corp.
 Henry M. Wick, Jr., Pittsburgh, Pa., for intervenor Ohio Barge Lines, Inc., Max O. Truitt, Jr., Washington, D. C., also entered an appearance for intervenor Ohio Barge Lines, Inc.
 Before BAZELON, Chief Judge, and ROBINSON and ROBB, Circuit Judges.
 Opinion filed by ROBB, Circuit Judge.
 Concurring Opinion filed by BAZELON, Chief Judge.
 Separate Opinion concurring in part and dissenting in part filed by SPOTTSWOOD W. ROBINSON, III, Circuit Judge.
 ROBB, Circuit Judge:
 
 
 1
 Several barge operating companies petition for review of an order of the Interstate Commerce Commission (ICC). The challenged order permits Ohio Barge Lines (OBL) to provide barge service to several Chicago area steel mills belonging to OBL's parent corporation, United States Steel. The petitioners, common carriers serving the same steel mills, object to the increased competition which will result from the Commission's order.
 
 
 2
 The petitioners attack the order on four grounds. They contend first that the Commission erred in not holding hearings to determine whether the order would result in a violation of 49 U.S.C. §§ 5(14)-5(16) (1970). (These sections were added to the Interstate Commerce Act by the Panama Canal Act of 1912 and will be referred to throughout the remainder of this opinion as "The Panama Canal Act"). The petitioners also contend that the Commission erred in not following its own precedents; in making arbitrary findings unsupported by the record; and in not reopening the record to consider new evidence proffered by the petitioners. Concluding that none of petitioners' contentions warrants reversal we affirm. We shall consider each of petitioners' contentions in turn.
 
 A. PANAMA CANAL ACT HEARINGS
 
 3
 We turn first to the petitioners' argument that the ICC abused its discretion in not, on its own initiative, holding hearings to determine whether the contested permit would result in violations of the Panama Canal Act. That Act mandates that no company shall be permitted to operate rail and water carriers which may compete with each other.[1] The statute permits the Commission to conduct hearings to determine whether such competition may arise. The hearings may be conducted either upon application of any carrier or upon the Commission's own motion. 49 U.S.C. § 5(15) (1970).[2] The administrative law judge who heard this case declined to conduct such hearings on his own motion, but invited the petitioners to apply for such a hearing as a separate proceeding. The petitioners have never done so.
 
 
 4
 The petitioners nevertheless contend that the ICC should have convened hearings on its own motion. The petitioners reason as follows: United States Steel controls both OBL and a railroad which serves the same steel mills OBL will serve under its permit, so that OBL's operation under the permit may violate the Panama Canal Act. If there is such a violation OBL's application does not meet a major prerequisite to the issuance of a permit; i. e., that the issuance be "consistent with the public interest and the national transportation policy . . . ." See 49 U.S.C. § 909(g) (1970). In order to make a finding of consistency with the public interest, the petitioners argue, the Commission must investigate the potential violation of the Panama Canal Act.
 
 
 5
 We find the petitioners' argument unpersuasive for several reasons.
 
 
 6
 First, provided that an agency has considered all the relevant factors, "An agency's decision to refrain from an investigation . . . is generally unreviewable . . . ." Kixmiller v. S.E.C., 160 U.S.App.D.C. 375, 379, 492 F.2d 641, 645 (1974). The Administrative Procedure Act exempts from judicial review agency decisions which, like this one, are "committed to agency discretion by law." Id., n. 27; 5 U.S.C. § 701(a)(2) (1970). And in considering a provision of the Interstate Commerce Act almost identical to the one at issue in this proceeding, the Supreme Court flatly stated:
 
 
 7
 Whether the Commission should make an investigation of a § 13a(1) discontinuance is of course within its discretion, a matter which is not reviewable.
 
 
 8
 City of Chicago v. United States, 396 U.S. 162, 165, 90 S.Ct. 309, 311, 24 L.Ed.2d 340 (1969) (emphasis supplied).[3] We conclude that the Commission's refusal to conduct an investigation in this case is similarly unreviewable.
 
 
 9
 Of course, in order to have its decision escape review, the Commission must actually exercise its discretion. If an agency simply ignores issues whose relevance to the public interest is obvious, the agency's decision may be reversed. Michigan Consolidated Gas Co. v. F.P.C., 108 U.S.App.D.C. 409, 431, 283 F.2d 204, 226 (1960), cert. denied, 364 U.S. 913, 81 S.Ct. 276, 5 L.Ed.2d 227 (1960).
 
 
 10
 In the present case, however, the Commission did not simply ignore the Panama Canal Act, but squarely confronted it. That the Commission's treatment of this issue is somewhat cursory does not change our conclusion. We do not judge the Commission's orders like entries in an essay contest. Rather:
 
 
 11
 If satisfied that the agency has taken a hard look at the issues with the use of reasons and standards, the court will uphold its findings, though of less than ideal clarity, if the agency's path may reasonably be discerned . . . .
 
 
 12
 Greater Boston Television Corp. v. F.C.C., 143 U.S.App.D.C. 383, 393, 444 F.2d 841, 851 (1970), cert. denied, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971).
 
 
 13
 In this case the Commission's path "may reasonably be discerned", although its language is convoluted. The Commission noted the number and complexity of elements required to make out a violation of the Panama Canal Act and concluded that there was no indication of their presence in this case. Ohio Barge Line, Inc., Extension Upper Mississippi River, No. W-406 (Sub-No. 11) ICC Div. 1, at p. 1 (January 27, 1976).
 
 
 14
 We conclude that the Commission has affirmatively exercised its discretion in refusing to investigate possible violations of the Panama Canal Act. As we have noted above, such decisions are unreviewable. We hold that the Commission's refusal to conduct an investigation (either as part of the present case or during separate hearings) is not subject to review in this court.
 
 
 15
 Even if the Commission's decision were reviewable, we would be compelled to affirm as to this issue on at least two separate grounds. First, the Commission's refusal to conduct an investigation is clearly supported by the record. The record contains no evidence of any competition between OBL and the railroads owned by United States Steel (USS). There is no evidence or allegation that OBL and any USS railroad would serve common points of both origin and destination, or that there is any cargo for which OBL and any such railroad might compete. Consequently, we cannot say that the ICC abused its discretion in declining to make further inquiry into possible competition between OBL and any railroad owned by United States Steel. When, as in this case, an agency's action is supported by an adequate basis, this court must affirm even if the court might arrive at a different conclusion were it to consider the case de novo. Greater Boston Television Corp. v. F.C.C., supra.
 
 
 16
 Finally, the petitioners raise their Panama Canal Act argument before the wrong forum. The petitioners were invited to apply to the Commission for a separate hearing and presumably may still do so.[4] Having failed to exhaust this administrative remedy, petitioners are foreclosed from obtaining relief in this court. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, 58 S.Ct. 459, 82 L.Ed. 638 (1938).
 
 
 17
 In summary, we hold that the ICC's decision not to make further inquiry into possible violations of the Panama Canal Act is neither arbitrary nor subject to review in this court, and that petitioners' remedy in any event is to apply to the ICC for a hearing.
 
 B. FAILURE TO REOPEN THE RECORD
 
 18
 We turn next to the petitioners' contention that the ICC abused its discretion in refusing to consider evidence proffered by the petitioners after the record had been closed.
 
 
 19
 The evidence which the petitioners sought to introduce concerned the impact of permits granted to four barge operators in the Chicago area while this case was pending before the agency. The petitioners argue that the presence of four new common carriers will enable the common carriers as a group to provide service better than that offered by OBL. The ICC based its grant of a permit to OBL upon a finding that OBL would provide better service to United States Steel than had the common carriers (including petitioners) then serving United States Steel. Hence, the petitioners argue, the ICC should have considered the impact of the four new permits.
 
 
 20
 The petitioners face the heavy burden of demonstrating that the ICC abused its discretion in refusing to reopen the record. The Supreme Court directs that federal courts decline to require reopening the record "except in the most extraordinary circumstances." Bowman Transportation Company, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 296, 95 S.Ct. 438, 447, 42 L.Ed.2d 447 (1974). The reasons for this policy are clear:
 
 
 21
 "Administrative consideration of evidence . . . always creates a gap between the time the record is closed and the time the administrative decision is promulgated. . . . If upon the coming down of the order litigants might demand rehearings as a matter of law because some new circumstance has arisen . . . there would be little hope that the administrative process could ever be consummated . . . ."
 
 
 22
 Id. at 294-95, 95 S.Ct. at 446 (quoting I.C.C. v. Jersey City, 322 U.S. 503, 514-15, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944)).
 
 
 23
 So strong is this policy that the Supreme Court has only once remanded a case because of an agency's refusal to reopen evidentiary hearings. Id.,419 U.S. at 295, 95 S.Ct. 438 (citing Atchison, Topeka & Santa Fe Ry. Co. v. United States, 284 U.S. 248, 52 S.Ct. 146, 76 L.Ed. 273 (1932)). And the one case in which the Supreme Court did reverse (the Santa Fe case above) involved the setting of freight rates for grain throughout the western United States, based upon economic conditions which were drastically changed by the advent of the depression shortly after the close of the hearings. United States v. Northern Pacific Ry. Co., 288 U.S. 490, 492-94, 53 S.Ct. 406, 77 L.Ed. 914 (1933).
 
 
 24
 In contrast, the Supreme Court has held that no reopening of the record will be ordered in cases which involve only a few points of origin and destination and revenue loss which, "while substantial, is far less than that effected by the order in the Santa Fe proceeding." Id. at 493, 53 S.Ct. at 407.
 
 
 25
 These pronouncements by the Supreme Court impel this court to affirm the Commission's refusal to reopen the record. Our conclusion is bolstered by the petitioners' lack of diligence. The "new" evidence proffered by the petitioners concerned four permits which were granted by the ICC well before the record was closed in this case. The petitioners did not seek to introduce evidence concerning the permits until March of 1975, eight months after the record was closed and two months after the administrative law judge's initial decision. As the Supreme Court noted under similar circumstances, "(W)e think the carriers' lack of diligence in bringing this matter to the Commission's attention deprived them of any equity to complain of the refusal of their petition." Id. at 494, 53 S.Ct. at 407.
 
 C. FIDELITY TO COMMISSION PRECEDENT
 
 26
 Petitioners next contend that even if the Commission did not err in refusing to hold hearings on the Panama Canal Act issue or in refusing to reopen the record, the Commission's grant of a permit to OBL is inconsistent with two sets of precedents established by Commission decisions. If the ICC has been inconsistent as alleged, then the Commission's order must be reversed as arbitrary and capricious. See Columbia Broadcasting System, Inc. v. F.C.C., 147 U.S.App.D.C. 175, 454 F.2d 1018 (1971); Greater Boston Television Corp. v. F.C.C., 143 U.S.App.D.C. 383, 444 F.2d 841 (1970), cert. denied, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971).
 
 
 27
 The Commission addressed both sets of precedents invoked by the petitioners, and explained at length why those precedents do not apply to this case. See Ohio Barge Line, Inc. Extension Upper Mississippi River, No. W-406 (Sub-No. 11) at 17-18, 21-22 (December 20, 1974) (initial decision by administrative law judge in this case) Ohio Barge Line, Inc., Extension Upper Mississippi River, No. W-406 (Sub-No. 11) ICC Div. 1, at p. 2 (January 27, 1976) (Commission order adopting conclusions of initial decision). We see no need to reproduce the Commission's explanation; it is enough to say that we find the reasoning compelling and we therefore reject the petitioners' argument.
 
 D. SUFFICIENCY OF THE EVIDENCE
 
 28
 The petitioners argue finally that the Commission was not supported by the evidence in concluding that OBL would provide better service than the petitioners and that the resulting loss of revenue to petitioners would not impair their operations. We have carefully considered the record and conclude that the Commission's findings have ample support in the record.
 
 
 29
 Uncontroverted testimony revealed that the grant of authority to OBL would cause petitioners to lose only a tiny percentage of their revenues, and that even that loss would be made up quickly by petitioners' rapidly growing business. The Commission quite reasonably concluded that impairment of petitioners' operations would be minimal.
 
 
 30
 The Commission's conclusion that OBL would provide better service than the petitioners is also supported by the record. The record shows that OBL will dedicate its barges exclusively to United States Steel, will advance or delay sailing dates as requested, will offer special low rates for uninsured cargo, and will not levy demurrage charges. Petitioners cannot match any of these advantages. Furthermore, United States Steel has experienced difficulties in obtaining barges when requested from petitioners and has frequently had to order barges it did not need in order to ensure their availability when needed.
 
 
 31
 Testimony favorable to the petitioners reveals that they offer larger, faster tugs than OBL. In the balance, however, we conclude that the Commission was supported by substantial evidence in deciding that OBL would provide United States Steel with better service than petitioners.
 
 
 32
 In summary, we conclude that the Commission was justified in refusing to reopen the record or to convene Panama Canal Act hearings, that the Commission did not deviate impermissibly from its own precedents, and that the Commission's factual findings are supported by substantial evidence.
 
 The order of the Commission is
 
 33
 affirmed.
 
 BAZELON, Chief Judge, concurring:
 
 34
 I concur with the majority, but add a word on the Panama Canal Act issues.
 
 
 35
 The Commission's brief incorrectly assumes that the dispositive issue is whether its decision not to initiate sua sponte a Panama Canal Act hearing is non-reviewable. In actuality, the more significant issue is whether the Commission could properly grant OBL its operating authority in light of the Panama Canal Act allegations. Section 309(g) of the Interstate Commerce Act, 49 U.S.C. § 909(g), provides that authority may be granted only when the Commission finds that the service to be provided will "be consistent with the public interest and the national transportation policy declared in this Act." Simply stated, the Commission could not have granted the OBL authority if petitioners' evidence demonstrated that doing so would have placed OBL in violation of the Panama Canal Act.
 
 
 36
 Petitioners claim the Commission disregarded what they characterize as a "prima facie" violation of the Canal Act. In fact, the Commission's order did briefly advert to their allegation of violation, stating it,
 
 
 37
 overlooks the complexity of (the Canal Act) issues including the fact that more than potential competition must exist and many factors such as service differences or prevailing rate differences may preclude a finding of competition. Southern Ry. Co. Section 5(15) Application, 342 I.C.C. 416, 433 (1972).
 
 
 38
 J.A. at 394. In affirming the Commission, the majority concludes that this language indicates the Commission has "squarely confronted" the Panama Canal Act. Maj.Op. at --- of --- U.S.App.D.C., at 725 of 556 F.2d.
 
 
 39
 Evidently, petitioners' theory is that the Canal Act is presumptively violated whenever a commonly owned railroad and barge operator service two common points.[1] If so, then the Commission's discussion is adequate for the authority cited clearly indicates that this theory is legally deficient. Service of two common points is necessary too, but does not by itself establish a violation. On the other hand, petitioners claim to have been denied discovery on their Panama Canal Act claim. So they may have been proceeding under a proper theory but were unable to develop the facts adequately. If so, the Commission has not articulated the basis of its decision with sufficient precision to enable this court to perform its limited review function.
 
 
 40
 As the majority indicates, the basis of an agency decision need not be stated with ideal clarity. But it must be discernible from the agency's order; the reviewing court cannot be expected to scour the record to ascertain it. Citizens Ass'n of Georgetown, Inc. v. Zoning Com'n of D. C., 155 U.S.App.D.C. 233, 239, 477 F.2d 402, 408 (1973). However, in order to expedite resolution of this case, I have had the benefit of an unguided examination of the 2,300 page joint appendix. Having done so, I suspect that petitioners' theory was and was found to be legally deficient. I have doubts on this matter. But I can put aside those doubts and vote to affirm the Commission because petitioners are free still to petition the Commission for a full hearing on their Panama Canal Act allegations.[2]
 
 
 41
 SPOTTSWOOD W. ROBINSON, III, Circuit Judge, concurring in part and dissenting in part:
 
 
 42
 The Panama Canal Act[1] forbids common control of a water carrier and a railroad with which it "does or may compete."[2] This interdiction is designed to prevent railroads from curtailing waterborne and, necessarily, intermodal competition by underwriting predatory practices of captive water carriers.[3] By the Commission's long-standing construction, rail and water carriers "do or may compete" if they serve, either directly or by interchange with other carriers, two or more points in common[4] unless the character of their respective services is such that the prospect of competition is clearly chimerical.[5] Once the Commission has found that the two carriers compete or may do so, the Act tolerates "the continuance or acquisition" of common control only if the water carrier will operate in the public interest and without "reduc(ing) competition on the route by water."[6]
 
 
 43
 I agree with Judge Bazelon that the policy reflected in the Panama Canal Act is subsumed in the national transportation policy articulated elsewhere in the Interstate Commerce Act,[7] of which it is a component. I agree, too, that since the Commission may permit only such water-carrier operations as are consistent with the latter policy,[8] it may not license service that would run afoul of the Panama Canal Act unless and until it has determined that the public interest will be furthered and competition on the water route will be preserved.[9] Conversely to my colleagues, however, I think the Commission should be required to do just that in this very proceeding. So, while joining in the disposition made of the other issues raised on appeal, I would remand this case to the Commission for that purpose.[10]
 
 
 44
 Ohio Barge Line sought the authority in controversy in order to haul to and from three steel mills located in the Chicago area and owned by United States Steel Corporation, Ohio Barge Line's parent. United States Steel also controls several railroads having trackage so located that routes over which they operate likely encompass points in common with the expanded overwater service[11] that Ohio Barge Line seeks to provide. No one pretends that the iron and steel traffic in which Ohio Barge Line would engage is unattractive to railroads.[12] If, then, the co-owned rail lines do in fact participate in parallel routings, there is a prima facie violation of the Panama Canal Act, and Ohio Barge Line can be granted the requested authority only after the Commission has made the investigation[13] and findings[14] that the Act requires.
 
 
 45
 Petitioners asked for discovery from United States Steel as to what railroads served its Chicago-area mills[15] in order to ascertain whether parallel routings exist.[16] Their request was rejected by the administrative law judge[17] and in turn by the Commission[18] on the ground that issues stemming from the Panama Canal Act are not germane to Ohio Barge Line's application for operating authority. Both the judge[19] and the Commission[20] invited petitioners to initiate an independent proceeding centering on the Panama Canal Act questions,[21] and thereby to hazard such harm as the allegedly illegal conduct might inflict for as long as it takes the Commission to conclude it.
 
 
 46
 Judge Bazelon and I concur in the view that exclusion of those issues from the then-pending proceeding was erroneous. But both of my colleagues would relegate petitioners to a separate proceeding if the issues are to be litigated at all. That position derives in large measure from the Commission's claim that "many factors such as service differences or prevailing rate differences may preclude a finding of competition" under the Panama Canal Act.[22] This assertion, however, is not borne out either by the Commission's own precedents[23] or, so far as the record reveals, by the facts of this case. Indeed, accompanying as it does the Commission's untenable limitation on the scope of the ongoing proceeding, it hardly appeals as a particularly well-conceived attempt at justification. I would remand this case to the Commission so that it may either give the Panama Canal Act issues the consideration they deserve or demonstrate that such consideration lay behind its cryptic catalogue of circumstances that "may preclude a finding of competition."[24]
 
 
 
 [1]
 Specifically, the act provides:
 Notwithstanding the provisions of paragraph (2) of this section, from and after the 1st day of July 1914, it shall be unlawful for any carrier, as defined in section 1(3) of this title, or (after September 18, 1940) any person controlling, controlled by, or under common control with such a carrier to own, lease, operate, control, or have any interest whatsoever (by stock ownership or otherwise, either directly, indirectly, through any holding company, or by stockholders or directors in common, or in any other manner) in any common carrier by water operated through the Panama Canal or elsewhere with which such carrier aforesaid does or may compete for traffic or any vessel carrying freight or passengers upon said water route or elsewhere with which said railroad or other carrier aforesaid does or may compete for traffic; and in case of the violation of this provision each day in which such violation continues shall be deemed a separate offense.
 49 U.S.C. § 5(14) (1970).
 
 
 [2]
 49 U.S.C. § 5(15) is reproduced in full in n. 3 below
 
 
 [3]
 Sec. 13a(1) deals with permission to discontinue or change the operation of trains or ferries and reads:
 . . . the Commission shall have authority . . . either upon complaint or upon its own initiative without complaint, to enter upon an investigation of the proposed discontinuance or change.
 49 U.S.C. § 13a(1) (1970).
 Compare the statutory provision at issue in this proceeding:
 The Commission may on its own motion or the application of any shipper institute proceedings to inquire into the operation of any vessel in use by any railroad or other carrier which has not applied to the Commission and had the question of competition or the possibility of competition determined as herein provided.
 49 U.S.C. § 5(15) (1970).
 
 
 [4]
 We do not reach the petitioners' argument that they have no statutory right to apply for a separate hearing. That argument would, of course, be irrelevant if the petitioners applied for a hearing and the Commission elected to grant the application. Until the time such an application is refused by the Commission the question is not ripe for review
 
 
 [1]
 See, e. g., J.A. 263, exceptions of intervening protestants
 
 
 [2]
 Although petitioners at one point moved to have OBL's authority proceeding held in abeyance until a motion for a Panama Canal Act hearing had been filed, petitioners never actually requested such a hearing. The reason for this, they now claim, is that they are not legally qualified to do so. Since both the Commission and OBL represent that petitioners are legally qualified, there is no reason to suspect that a petition for a hearing will be challenged on standing grounds. And since in its brief the Commission argues that petitioners' proper remedy is in a Panama Canal Act hearing, it evidently does not regard its decision in this proceeding as res judicata on the question of Canal Act violation
 
 
 [1]
 The relevant portions of the Act are codified at 49 U.S.C. §§ 5(14)-(16) (1970)
 
 
 [2]
 49 U.S.C. § 5(14) (1970)
 
 
 [3]
 H.R.Rep.No.423, 62d Cong., 2d Sess. 12 (1912):
 The apprehension of railroad-owned vessels driving competition from the canal may or may not be exaggerated, but . . . the evil . . . already exists in the coastwise trade . . ., as well as on our lakes and rivers. . . . The proper function of a railroad corporation is to operate trains . . ., not to occupy the waters with ships in mock competition with itself, which in reality operate to the extinction of all genuine competition. . . . (T)he committee thinks it wise, just, and opportune . . . to serve the . . . more necessary purpose of excluding the railroads from operating vessels in competition with their tracks anywhere. . . .
 The proscription to which this explanation pertains was omitted from the Senate version, but the substitute adopted in conference "restore(d) the virility of the House provision extending the prohibition to railroad-owned ships on all waters." H.R.Rep.No.1197, 62d Cong., 2d Sess. 6 (1912) (conference report). See American Waterways Operators, Inc. v. United States, 386 F.Supp. 799, 803 (D.D.C.1974), aff'd per curiam sub nom. Water Transp. Ass'n v. United States, 421 U.S. 1006, 95 S.Ct. 2410-2411, 44 L.Ed.2d 675 (1975).
 
 
 [4]
 See, e. g., Atlas Corp. Application Under the Panama Canal Act, 248 I.C.C. 373, 379-381 (1941), citing Southern Pac. Co.'s Ownership of Oil Steamers, 37 I.C.C. 528, 529 (1916); Ocean S. S. Co., 37 I.C.C. 422, 425 (1915); Southern Pac. Co. Operation, Pac. Mail SS. Co., 32 I.C.C. 690, 694 (1915). Cf. New York Harbor Water Facilities Applications, 100 I.C.C. 383, 387-388 (1925); Application of Pere Marquette and Bessemer & L. E. Ry. Cos., 34 I.C.C. 86, 87-88 (1915); Lake Lines Application Under Panama Canal Act, 33 I.C.C. 699, 706-707 (1915). See also Southern Ry. Co. Section 5(15) Application, 342 I.C.C. 416, 434 (1972), aff'd sub nom. American Waterways Operators, Inc. v. United States, supra note 3
 
 
 [5]
 See, e. g., Chicago, M. St. P. & P. R. Co. Control, Bremerton Freight Car Ferry, Inc., 312 I.C.C. 553, 557 (1961) (scope of applicant's participation in alternative route such that even if alternative route "competes," applicant does not); Application of Union Lumber Co., 157 I.C.C. 376, 380 (1929) (railroad's through route required interchange with another railroad at such high rates as to render impossible "any effective or real competition as between the two services"); Southern Pac. Co. Ownership of Schooner Pasadena, 33 I.C.C. 476, 477 (1915) (all-rail route proposed, but "whether or not it will eventually be constructed does not appear"). Cf. Peninsular & O. S. S. Co., 204 I.C.C. 142, 144 (1934). The narrow reach of this exception is exemplified in Ocean S. S. Co., supra note 4, 34 I.C.C. at 424. There the evidence showed that competition for traffic was "sporadic and negligible" and that the railroads moved only traffic not "suitable for carriage by water." Still, the railroad evinced an interest in future competition for traffic susceptible of water carriage, and the possibility thereof satisfied the Commission that the carriers did or might compete. Id. at 424-425
 
 
 [6]
 49 U.S.C. § 5(16) (1970)
 
 
 [7]
 The Declaration of National Transportation Policy, 54 Stat. 899 (1940), 49 U.S.C. preceding §§ 1, 301, 901, and 1001 (1970), provides for "fair and impartial regulation of all modes of transportation . . ., so . . . as to recognize and preserve the inherent advantages of each; . . . (to) foster sound economic conditions . . . among the several carriers"; and to do so "without . . . unfair or destructive competitive practices . . . ." Cf. A. L. Mechling Barge Lines v. United States, 376 U.S. 375, 381-382, 84 S.Ct. 874, 877-878, 11 L.Ed.2d 788, 792-793 (1964). See also W. Jones, Regulated Industries 717-740 (2d ed. 1976) (discussing the various restrictions on intermodal cross-ownership)
 
 
 [8]
 49 U.S.C. § 909(g) (1970)
 
 
 [9]
 And, like Judge Bazelon, I have no difficulty in concluding that the Commission's action in this regard is judicially reviewable. I realize that the courts have no role when an agency possesses and has appropriately exercised a discretion as to whether a particular inquiry will be conducted, but there is no occasion to consider whether the Commission's authority to sua sponte investigate Panama Canal Act questions falls within that realm. Whatever the outcome in that respect might be, there is no room for a discretion to ignore transportation policy which a statute here the Interstate Commerce Act commands the Commission to honor in a proceeding arising under its aegis
 
 
 [10]
 While I agree that the Commission committed no error in refusing to reopen the record, were the case remanded, as in my view it should be, the Commission would be well advised to utilize the opportunity to update its already outmoded factual findings. Cf. Pasadena Broadcasting Co. v. FCC, 180 U.S.App.D.C. ---, at ---, 555 F.2d 1046, at 1048 n. 12 (1977)
 
 
 [11]
 Ohio Barge Line and its affiliate, Warrior & Gulf Navigation Company, already possess broad operating authority. This Commission has never inquired into the consonance of much of that authority with the Panama Canal Act. See, e. g., Ohio Barge Line, Inc., Control, 250 I.C.C. 57, 61 (1941); Warrior & Gulf Navigation Co., Control, 250 I.C.C. 26, 31 (1941)
 
 
 [12]
 We recently passed on the validity of a Commission order dealing with rail and water competition for iron and steel traffic originating in St. Louis, Missouri. Waterways Freight Bureau v. United States, --- U.S.App.D.C. ---, 561 F.2d 947 (1977). The record in that case, of which we may of course take judicial notice, Fed.R.Evid. 201; see Gomez v. Wilson, 155 U.S.App.D.C. 242, 247 n. 28, 477 F.2d 411, 416 n. 28 (1973) and cases cited therein; cf. Dixon v. Jacobs, 138 U.S.App.D.C. 319, 326, 427 F.2d 589, 596 (1970); T.V.T. Corp. v. Basiliko, 103 U.S.App.D.C. 181, 183, 257 F.2d 185, 187 (1958), indicates that in at least some instances railroads haul large volumes of iron and steel over even water-competitive routes. Waterways Freight Bureau v. United States, supra, Deferred Appendix at 138-139. More intriguingly for present purposes, it also reveals that during the pendency of the instant proceeding some railroads published proposed rates on steel transportation from Chicago which were designed to be competitive with the rates for water carriage, and had applied as well for the "fourth section" relief requisite to adoption of the proposed rates. Id., Deferred Appendix at 110, 147
 
 
 [13]
 49 U.S.C. § 5(15) (1970)
 
 
 [14]
 49 U.S.C. § 5(16) (1970)
 
 
 [15]
 Joint Appendix (J.App.) 59-60
 
 
 [16]
 J.App. 428-430
 
 
 [17]
 Ohio Barge Line, Inc., Extension Upper Mississippi River, ICC No. W-406 (Sub-No. 11) (report and order on prehearing conference and petition for discovery, Sept. 15, 1972) (unreported), J.App. 94, 96. In the administrative law judge's order of December 23, 1974 (unreported), J.App. 217-218, he not only reaffirmed his position that the Panama Canal Act issues could not be entertained in the instant proceeding, but asserted also that the Act did not apply to contract carriers such as Ohio Barge Line. The Commission, however, disagreed with the latter conclusion. Id. (Decision and Order, Jan. 27, 1976 (unreported), J.App. 394
 
 
 [18]
 Id. (decision and order, Jan. 27, 1976) (unreported), J.App. 394
 
 
 [19]
 Id. (order, Dec. 23, 1974), J.App. 218
 
 
 [20]
 Id. (decision and order, Jan. 27, 1976), J.App. 394
 
 
 [21]
 See 49 U.S.C. § 5(15) (1970)
 
 
 [22]
 Ohio Barge Line, Inc., Extension Upper Mississippi River, supra note 17 (decision and order, Jan. 27, 1976) (unreported), J.App. 394
 
 
 [23]
 See notes 4-5 supra and accompanying text
 
 
 [24]
 See text supra at note 22