**REYNOLDS METALS COMPANY,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent.

No. 75–1333.

United States Court of Appeals,
District of Columbia Circuit.

Argued 20 Jan. 1976.
Decided 23 April 1976.

**380**

Philip R. Ehrenkranz, Washington, D. C., with whom Keith R. McCrea and Craig W. Hulvey, Washington, D. C., were on the brief for petitioner.

Thomas M. Walsh, Atty., F. P. C., Washington, D. C., with whom Drexel D. Jour-

ney, Gen. Counsel, Robert W. Perdue, Deputy Gen. Counsel, and Allan Abbot Tuttle, Sol., F. P. C., Washington, D. C., were on the brief for respondent.

Before McGOWAN and WILKEY, Circuit Judges, and BRYAN,* United States District Judge for the Eastern District of Virginia.

Opinion for the Court filed by Circuit Judge WILKEY.

WILKEY, Circuit Judge:

Petitioner, Reynolds Metals Company (Reynolds) seeks review of two unreported Federal Power Commission orders issued in *Arkansas Louisiana Gas Company,* Docket No. RP75–32: a letter order issued 31 December 1974 [1] and an order denying rehearing issued 27 February 1975.[2] Reynolds challenges the Commission's rejection of a rate filing by Arkansas Louisiana Gas Company (Arkla) made pursuant to section 4 of the Natural Gas Act.[3] The FPC rejected Arkla's rate filing because it attempted to change the terms of service set forth in a 1959 certificate of public convenience and necessity issued under section 7 of the Act.[4] We agree with the Commission's determination and therefore affirm its orders challenged herein.

## I. FACTUAL BACKGROUND

Reynolds is a corporation engaged in manufacturing and processing operations throughout the United States. Since 1945 Reynolds has purchased natural gas from Arkla for its two Arkansas plants (Hurricane Creek and Jones Mills) and for the Lake Catherine Station of Arkansas Power and Light Company. These sales of gas to Reynolds in volumes approximating 102,000 Mcf per day were included in a "grandfa-

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

1. Letter Order Rejecting Rate Change, Docket No. RP75–32 (31 Dec. 1974), Joint Appendix (J.A.) at A–88 to A–89.

2. Order Denying Rehearing, Docket No. RP75–32 (27 Feb. 1975), J.A. at A–111 to A–113.

3. 15 U.S.C. § 717c (1970).

4. 15 U.S.C. § 717f (1970).

ther" certificate (the sales certificate) issued to Arkla in 1956, authorizing Arkla to continue serving existing customers.[5]

A portion of Reynolds' Arkansas natural gas requirement is, and since 1960 has been, satisfied with gas owned by Reynolds and transported by Arkla pursuant to transportation contracts between Arkla and Reynolds dated 12 March 1959. These gas transportation contracts provided as follows: (1) Reynolds agreed to deliver *all* gas purchased and received by Reynolds each day under certain contracts entered into, and to be entered into, by Reynolds and various gas sellers from the Benton and South Sarepta Fields of Louisiana, up to 65,000 Mcf per day; (2) Arkla agreed to receive from Reynolds this gas (together with any other gas, from whatever source obtained, which Reynolds tendered for delivery, *e. g.,* the Arkansas intrastate gas) up to 65,000 Mcf per day and to transport the gas to Reynolds' three points of industrial consumption in Arkansas; and (3) Reynolds agreed to receive the gas delivered by Arkla to these points of consumption.[6]

The interstate transportation aspects of this arrangement were approved by a certificate (the transportation certificate) issued 31 July 1959 wherein the Commission authorized Arkla ". . . to transport up to 65,000 Mcf of gas per day for Reynolds . . . from two points in the Benton and South Sarepta Fields . . . to one or more of three points of industrial consumption in the State of Arkansas . .," *i. e.,* to Hurricane Creek, Jones Mills, and

Lake Catherine.[7] In addition, the Commission observed,

> The proposed arrangement is to replace in part Applicant's [Arkla's] sale of gas to Reynolds' Hurricane Creek and Jones Mills plants in Arkansas and at the Lake Catherine power plant of Arkansas Power and Light Company where gas is used for generating electricity for the Jones Mills plant.

> Total deliveries to the plants will remain at about 100,000 Mcf per day, including both the transportation gas and gas sold by Applicant to Reynolds.[8]

When the FPC states in its 1959 order that "[t]he proposed arrangement is to replace in part Applicant's [Arkla's] sale of gas to Reynolds . . .," the Commission is referring to the gas sales contract, which was filed along with the previously mentioned transportation contracts as part of Arkla's application for the 1959 transportation certificate. Under this sales contract Arkla agreed to sell and deliver to Reynolds, and Reynolds agreed to purchase and receive from Arkla, whatever amounts of gas Reynolds' Arkansas operations required (not to exceed 102,000 Mcf per day), *to the extent that Reynolds' requirements exceeded the volumes of gas transported by Arkla for Reynolds under the Louisiana and Arkansas transportation contracts.*[9] In other words, Arkla agreed to sell to Reynolds whatever amounts of gas the Arkansas operations required, up to a combined total (transportation gas plus sales gas) of 102,000 Mcf per day, and under the Louisiana

5. Findings and Order Issuing Certificate of Public Convenience and Necessity, Docket No. G–10887, 16 F.P.C. 1382 (26 Dec. 1956), J.A. at A–9 to A–11.

6. Louisiana Gas Transportation Contract of 12 March 1959, J.A. at A–25 to A–35; Arkansas Gas Transportation Contract of 12 March 1959, Record at 198–226. The primary term of the Louisiana interstate transportation contract expired on 1 January 1975. The parties, however, on 1 July 1974 executed an amendment extending this contract for another primary term of five years. Agreement of 1 July 1974, J.A. at A–51 to A–62. It was this contract amendment that Arkla incorporated into tariff sheets and filed with the FPC on 5 November 1974, and it was this filing that the FPC rejected in its letter order of 31 December 1974.

7. Findings and Order Issuing Certificate of Public Convenience and Necessity, Docket No. G–18190, 22 F.P.C. 158 (31 July 1959), J.A. at A–46 to A–48.

8. *Id.* at 159, J.A. at A–47. These two paragraphs were taken verbatim from the earlier Notice of Application and Date of Hearing issued by the Commission on 24 June 1959, J.A. at A–44.

9. Gas Sales Contract of 12 March 1959, J.A. at A–38 to A–39.

transportation contract Reynolds correspondingly agreed to deliver to Arkla for transportation *all* gas purchased and received by Reynolds under its contracts with certain other gas sellers.

Arkla's application for the 1959 transportation certificate stated that

> . . . the practical effect of the instant transaction [the Arkla-Reynolds transportation and sales arrangement] places approximately 300 billion cubic feet of new reserves behind Applicant's [Arkla's] system and releases approximately 20 billion cubic feet per year of annual withdrawals from Applicant's current reserves for other sales or for use by other system customers.[10]

Thus, Arkla represented to the Commission that it would transport an average of 55,000 Mcf per day (*i. e.,* "20 billion cubic feet per year") of Reynolds' gas, thereby freeing an equivalent amount of Arkla's reserves for sale to other customers.[11] These were the facts upon which the Commission acted when it issued the 1959 transportation certificate. During the period since 1959 Reynolds' total gas requirements have remained close to 102,000 Mcf per day, but the volume attributable to the transportation service has declined because, according

to Reynolds, the deliverability of its supply sources has declined.

On 5 November 1974 Arkla filed under section 4 of the Natural Gas Act a change in its rate schedule (*i. e.,* the amended Louisiana Gas Transportation Contract of 1 July 1974 [12]) that (1) increased the transportation charge from 4.5 cents per Mcf to 18.95 cents per Mcf,[13] (2) decreased the transportation maximum by 40,000 Mcf per day, from 65,000 to 25,000 Mcf per day,[14] (3) restricted the producing sources from which Reynolds could tender gas for transportation by Arkla,[15] and (4) rearranged Arkla's 102,000 Mcf per day transportation and sales obligation among Reynolds' three industrial consumption points.[16] On 31 December 1974 the FPC issued the first order challenged herein, a letter order rejecting Arkla's rate filing. In this order the Commission found that Arkla lacked certificate authority to make the proposed changes and advised that, upon receipt of an application for new certificate authority, the Commission would "consider whether the apparent increase in direct sales, reduction in transport volumes and rearrangement of deliveries to each of the three delivery points . . . is [*sic*] required by the public convenience and necessity." [17] Thereafter, Reynolds filed a pe-

---

10. Arkansas Louisiana Gas Co. Application for Certificate of Public Convenience and Necessity, Docket No. G–18190 (filed 30 Mar. 1959), J.A. at A–22.

11. Specifically, in its application Arkla indicated (1) that its "other customers of all classes [would] benefit in that . . . [t]he reserves acquired . . . in contemplation of Reynolds' total requirements will be available in the index for other system customers . . ." and (2) that Arkla itself would "benefit from proposed service in that . . . [g]as reserves previously procured by [Arkla] behind its own system in contemplation of Reynolds' entire fuel requirements under its prior sales contracts [would] now be utilized for other sales or retained for future use by existing customers of all classes." *Id.,* J.A. at A–17 to A–19.

12. *See* note 6 *supra.*

13. Arkansas Louisiana Gas Co., FPC Tariff, Rate Schedule XT–17, J.A. at A–68.

14. *Id.*

15. *Id.* at A–67, A–69 to A–70. Under the unamended Louisiana gas transportation contract of 1959, Arkla was obligated to receive and transport gas from the Benton and South Sarepta Fields of Louisiana, "together with any other gas, from whatever source obtained, which Reynolds tender[ed] for delivery." Louisiana Gas Transportation Contract of 12 March 1959, J.A. at A–28. Under Arkla's proposed rate filing and the contract amendment of 1 July 1974, the parties agreed that Reynolds could only deliver for transportation gas which it received from the two Louisiana fields.

16. *Id.* at A–71.

17. Letter Order Rejecting Rate Change, Docket No. RP75–32 (31 Dec. 1974), J.A. at A–88. Since the "apparent increase in direct sales" and the "reduction in transport volumes" adequately support the Commission's rejection of Arkla's rate filing, we do not decide whether "the rearrangement of deliveries to each of the three delivery points" also required such rejection. We note, however, that in its brief the Commission seems to concede that this rear-

tition to intervene [18] and an application for rehearing.[19] In this application Reynolds informed the Commission that due to a decline in the deliverability of Reynolds' sources of supply Arkla presently transports only about 18,000 Mcf per day of Reynolds' gas; volumes sufficient to satisfy the remainder of Reynolds' daily requirements are supplied from Arkla's reserves. Therefore, Reynolds contended that the proposed 40,000 Mcf per day reduction (from 65,000 to 25,000 Mcf per day) in Arkla's transportation obligation would not alter the use of Arkla's certificated facilities or the volume of gas sold to Reynolds.

On 27 February 1975 the Commission issued the second order challenged by Reynolds, the order denying rehearing. The Commission offered the following response to Reynolds' assertion that the 40,000 Mcf per day reduction in Arkla's transportation obligation would not affect actual sales volumes:

> In our opinion a substantial change is here contemplated in Arkla's certificate authority. In its 1959 order the Commission noted Arkla's proposal to transport up to 65,000 Mcf per day, and that this proposed arrangement would replace in part the sale of gas to Reynolds at the three delivery points. Even though actu-

al transportation deliveries have fallen to 18,000 Mcf per day, a change in the contract limit from 65,000 Mcf to 25,000 Mcf per day is a substantial change in the limitations in the 1959 certificate. If we permitted this contractual change to take effect without certificate authority, the 1959 certificate would mean very little. Thus reducing the limitation on the amount of Reynolds' own gas that Arkla will transport and thereby, in effect, increasing the possibility of industrial sales to Reynolds from Arkla's gas is a matter with which we should be properly concerned in a certificate proceeding.[20]

After the rejection of its first filing, Arkla submitted a second rate filing embodying only the increase in transportation charge. By order issued 13 February 1975, the Commission accepted and suspended this filing.[21] Thus, Arkla continues to serve Reynolds under the authority of the 1956 sales certificate and the 1959 transportation certificate. On 1 April 1975 Reynolds filed its petition for review in this court.

## II. ABANDONMENT

■ The question presented here is whether Arkla should have proceeded with its filing of 5 November 1974 under section 4 or section 7 of the Natural Gas Act.[22]

---

rangement is not a significant change in service: "The only significant difference in [Arkla's] present obligations and those proposed in the requested filing is the possibility that the continued 65,000 Mcf/day maximum will oblige Arkla to sell less gas to Reynolds than would the 25,000 Mcf/day maximum." Brief for Respondent FPC at 13. Similarly, the Commission appeared to place no reliance on the proposed rearrangement when it denied Reynolds' application for rehearing. Perhaps Arkla can submit, and the Commission will accept under section 4, a filing embodying only this rearrangement.

18. Reynolds' petition for leave to intervene was granted by FPC order issued 13 February 1975. Record at 424–28.

19. Reynolds Metals Co. Application for Rehearing, Docket No. RP75–32 (filed 30 Jan. 1975), J.A. at A–100 to A–110.

20. Order Denying Rehearing, Docket No. RP75–32 (27 Feb. 1975), J.A. at A–113.

21. Order Accepting for Filing and Suspension Tendered Tariff Sheet, Granting Request for Waiver, Providing for Hearing, Granting Interventions and Establishing Procedures (13 Feb. 1975), Record at 424–28.

22. The distinction between section 4 and section 7 is basically procedural; it turns upon the extent of a contemplated change in service. Section 4(d) provides in pertinent part:

> Unless the Commission otherwise orders, no change shall be made by any natural-gas company in any . . . service . . . except after thirty days' notice to the Commission and to the public.

15 U.S.C. § 717c(d) (1970). Under section 4 unless a filed change "patently is either deficient in form or a substantive nullity" the Commission cannot reject it, *Municipal Light Bds. v. FPC*, 146 U.S.App.D.C. 294, 450 F.2d 1341, 1345 (1971); the Commission can only delay its effectiveness by suspending it for up to five months, subject to hearings and possible refunds, Natural Gas Act § 4(e), 15 U.S.C. § 717c(e) (1970). Generally, this five month

Clearly, through its rate filing Arkla sought to change the terms of service under which Arkla transported Reynolds' gas. Reynolds, however, argues that Arkla can proceed under section 4 of the Act because the 40,000 Mcf per day (sixty-two percent) reduction in Arkla's transportation obligation is not a material modification of the service. On the other hand, the Commission concludes that Arkla's filing contemplated "a substantial change in the limitations of the 1959 certificate," i. e., "a matter with which [the Commission] should be properly concerned in a certificate proceeding" under section 7.[23]

■■■ An "abandonment" within the meaning of section 7(b) occurs whenever a natural gas company permanently reduces a significant portion of a particular service.[24] We concur in the Commission's determination that the permanent, sixty-two percent reduction of Arkla's obligation to transport Reynolds' gas amounted to an abandonment of that service. The FPC correctly decided that this change must at least be evaluated in a certificate proceeding under section 7 to determine whether the public convenience and necessity demands that this transportation service, once dedicated to the interstate market, continue to be fully, and

not just partially, available to that market.[25]

In support of its contentions, Reynolds points to the fact that Arkla's daily deliveries of Reynolds' transportation gas are averaging only 18,000 Mcf, a volume well under the proposed 25,000 Mcf per day ceiling. Perhaps in a section 7 certificate proceeding Reynolds will be able to demonstrate that, in terms of practical effect, it makes no difference whether Arkla's maximum transportation obligation is 65,000 or 25,000 Mcf per day, because Reynolds' daily purchases from the Louisiana fields will never again exceed the 25,000 Mcf figure nor will Reynolds ever voluntarily tender gas from other sources sufficient to exceed that limit. However, absent such a showing, the possibility remains that the proposed reduction in Arkla's transportation obligation could force Arkla to sell Reynolds more gas than that required under the higher maximum of 65,000 Mcf per day.[26]

■■■ Thus, the reduction in Arkla's transportation obligation could portend a permanent increase in sales to Reynolds and a corresponding permanent decrease in the volume of Arkla's supplies available to other customers. Since Arkla's supplies are

---

period will lapse and the change will become effective before the hearings are completed.

In comparison, section 7(b) governs a change of service that amounts to an "abandonment" and requires the hearings to be completed *before* such a change is made. In pertinent part, *section 7(b)* provides:

No natural-gas company shall abandon . . . any service rendered by means of [jurisdictional] facilities, without the permission and approval of the Commission first had and obtained, after due hearing, and a finding by the Commission that the available supply of natural gas is depleted to the extent that the continuation of service is unwarranted, or that the present or future public convenience or necessity permit such abandonment.

15 U.S.C. § 717f(b) (1970).

23. Order Denying Rehearing, Docket No. RP75–32 (27 Feb. 1975), J.A. at A–113.

24. *See United Gas Pipe Line Co. v. FPC,* 385 U.S. 83, 86–88, 87 S.Ct. 265, 267–268, 17 L.Ed.2d 181, 184–186 (1966); *Michigan Power Co. v. FPC,* 161 U.S.App.D.C. 221, 494 F.2d 1140, 1144 (1974); *Panhandle E. Pipe Line Co.*

*v. Michigan Consol. Gas,* 177 F.2d 942, 947 (6th Cir. 1949).

25. Although the Commission does not mention in either of its orders the additional restriction placed on producing sources from which Reynolds can tender transportation gas, arguably this aspect of Arkla's filing also amounted to an abandonment of service. *See* note 15 *supra.*

26. ·For example, suppose that Reynolds' requirements remain at 102,000 Mcf per day and that it begins to purchase 52,000 Mcf per day from its Louisiana supply sources. Under the unamended transportation and sales contracts Reynolds would be required to tender for transportation, and Arkla would be obliged to transport, 52,000 Mcf per day. Additionally, Arkla would be required to sell Reynolds' 50,000 Mcf per day. Compare this with the result under the amended transportation contract (*i. e.,* under Arkla's rejected filing): Reynolds would be required to tender only 25,000 Mcf per day, and Arkla would be obliged to transport this 25,000 Mcf and to sell an additional 77,000 Mcf per day.

already insufficient to serve all of its customers,[27] the possibility of this further diversion of its resources certainly constitutes "a matter with which [the FPC] should be properly concerned in a certificate proceeding."[28] Under the circumstances of this case, the Commission properly concluded that the potential effect of a 40,000 Mcf per day reduction in Arkla's transportation obligation was significant enough to require a section 7 certificate proceeding in which the actual impact of this change could be assessed before it became effective.

## III. CONCLUSION

Reynolds has variously asserted that the Commission failed to develop a record reasonably supporting its conclusions, that it arbitrarily refused to consider all factors relevant to its decision (e. g., the 1956 sales certificate), and that the Commission's conclusions lack a rational basis. These objections can be disposed of in summary fashion.

Reynolds' complaint that the record fails to demonstrate that sales to Reynolds would, rather than could, increase misses the point. The purpose of a certificate proceeding would be to make this precise determination.[29] Similarly, Reynolds' assertion that the Commission essentially disregarded all factors except the 1959 transportation certificate is also without merit. The Commission was well aware of the limits established by the 1956 and 1959 certificates and recognized that the change contemplated in Arkla's filing could produce (1) a significant reduction (i. e., and abandonment) of the transportation service authorized by the 1959 certificate and (2) a significant increase in the sales authorized by the 1956 certificate. Accordingly, the FPC determined that Arkla's section 4 filing was inappropriate and that this change should properly be considered in a section 7 certificate proceeding.

The orders challenged herein are based on the factual predicate that Arkla's industrial sales to Reynolds *could* increase if Arkla's transportation obligation is reduced. As the previous section of this opinion makes clear, this determination was a reasoned conclusion from the record as a whole. Hence, the Commission's orders are

*Affirmed.*

---

27. Brief for Respondent FPC at 12.

28. Order Denying Rehearing, Docket No. RP75–32 (27 Feb. 1975), J.A. at A–113. As this court recognized in *Virginia Petroleum Jobbers Ass'n v. FPC,* 110 U.S.App.D.C. 339, 293 F.2d 527, 529 (1961), the Commission has an obligation to protect present and potential users of a natural gas company's gas supply from unwise diversions of that gas.

29. It should be noted that, aside from Reynolds' representations that recent deliveries of transportation gas have been averaging 18,000 Mcf per day, the Commission could not know, absent an investigatory proceeding (e. g., a section 7 certificate proceeding), what volumes have been delivered pursuant to the Arkla-Reynolds transportation and sales arrangement.