677 F.2d 124
 219 U.S.App.D.C. 273
 CERRO WIRE & CABLE CO., et al., American Bakeries Co., et
al., Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Public Service Electric and Gas Company, Transcontinental
Gas Pipe Line Corporation, Brooklyn Union Gas
Company, Process Gas Consumers Group,
American Iron and Steel
Institute, Intervenors.
 No. 80-2504.
 United States Court of Appeals, District of Columbia Circuit.
 Argued Oct. 29, 1981.
Decided April 30, 1982.
 
 Morton L. Simons with whom Barbara M. Simons, Washington, D. C., was on the brief, for petitioners.
 Joanne Leveque, Atty., Federal Energy Regulatory Commission with whom Jerome Nelson, Acting Gen. Counsel and Sol., Federal Energy Regulatory Commission, Washington, D. C., was on the brief, for respondent.
 
 
 1
 Robert G. Hardy with whom Thomas F. Ryan, Jr. and David J. Evans, Washington, D. C., were on the brief, for intervenor, Transcontinental Gas Pipe Line Corp.
 
 
 2
 Joseph P. Stevens and William R. Coleman, Brooklyn, N.Y., were on the brief, for intervenor, The Brooklyn Union Gas Co.
 
 
 3
 James R. Lacey, Newark, N. J., entered an appearance for intervenor, Public Service Elec. and Gas Co.
 
 
 4
 Edward J. Grenier, Jr., Richard P. Noland and Richard A. Oliver, Washington, D. C., entered appearances for intervenor Process Gas Consumers Group, et al.
 
 
 5
 Before LUMBARD*, Senior Circuit Judge, United States Court of Appeals for the Second Circuit, and ROBB and MIKVA, Circuit Judges.
 
 
 6
 Opinion for the Court filed by Circuit Judge ROBB.
 
 ROBB, Circuit Judge:
 
 7
 Pursuant to section 19(b) of the Natural Gas Act, 15 U.S.C. § 717r(b) (1976) petitioners, commercial and industrial users of natural gas, challenge two orders issued by the Federal Energy Regulatory Commission. In the first order the Commission dismissed for failure to state a cause of action petitioners' complaints alleging a violation of section 7(b) of the Act, 15 U.S.C. § 717f(b) (1976), by Transcontinental Gas Pipe Line Corporation (Transco). The second order denied petitioners' request for a rehearing. Because we think the Commission properly exercised its discretion in dismissing the complaints, we affirm.
 
 
 8
 Transco is an interstate natural gas pipeline company which sells gas wholesale and provides transportation services to distribution companies, such as utilities, and municipalities in a number of states. Because natural gas is a principal energy source for the heating of dwelling houses and other buildings, winter is the time of peak gas consumption. During the 1970s a severe shortage of natural gas supplies developed, forcing pipeline companies to curtail deliveries to their customers. Under the regulatory scheme then in effect gas prices in the interstate market were regulated but prices in the intrastate market were not. New gas supplies therefore were in large part sold in the intrastate markets in order to take advantage of higher prices. Because sales directly to end-users were not subject to interstate price regulation, these purchasers could successfully compete on a price basis for gas supplies at the wellhead that would not otherwise be available in the interstate market. To help alleviate the hardships caused by curtailed gas deliveries the Commission authorized interstate pipeline companies to transport gas which certain priority industrial and commercial end-users were able to locate and purchase at the wellhead.[1] Under this program, known as the Order No. 533 program, Commission policy was to issue certificates of public convenience and necessity authorizing such transportation. The certificates were valid for two years and could be renewed.
 
 
 9
 Two types of service contracts are generally entered into by pipeline companies and their customers. Under firm service contracts, the seller is expressly obligated to deliver specific volumes of gas within a given time period and no interruptions are anticipated. 18 C.F.R. § 2.78(c)(4) (1981). Interruptible service contracts, the second type, do not expressly obligate the seller to deliver specific volumes within a given time period and anticipate and permit interruption of deliveries on short notice. 18 C.F.R. § 2.78(c)(5) (1981). Most of the contracts entered into pursuant to the Order No. 533 certificates of public convenience and necessity were on an interruptible service basis because they were designed as short-term measures to utilize excess pipeline capacity caused by the natural gas shortage.
 
 
 10
 In 1977-79, pursuant to Order No. 533 Transco obtained certificates to transport direct sale gas for petitioners. Each certificate was for a term of two years and stated that transportation service would be provided on an interruptible basis.[2] Accordingly the contracts between Transco and petitioners were also for interruptible service only. In December 1979 petitioners were informed by Transco that service would likely be interrupted for a period of thirty to ninety days during the winter of 1979-80 due to a lack of sufficient pipeline capacity to transport gas for both Transco's firm service customers and petitioners. Objecting to this decision petitioners filed complaints[3] with the Commission on December 20, 1979 alleging Transco's action constituted an abandonment of service in violation of section 7(b) of the Act.[4] In its response to the Commission, Transco averred that its pipeline capacity was 3150 Mdts (thousand dekatherms) per day, all of which was needed to meet firm service commitments. While acknowledging that excess capacity might be available on occasional days during the winter, Transco maintained that it was impractical to provide transportation services intermittently on a day-to-day basis. Transco also noted that petitioners were in no danger of having their gas supplies curtailed because distributors in their respective regions had an adequate supply available. Referring to these facts Transco moved for summary dismissal of the complaints on the ground that its contracts with petitioners were explicitly interruptible if pipeline capacity shortage occurred.
 
 
 11
 The Commission held an informal conference on March 4, 1980 at which Transco and petitioners participated. Pursuant to requests by the Commission staff, Transco supplied data concerning its operations and the amount of transportation capacity it had available. On August 12, 1980 the Commission dismissed the complaints for failure to state a cause of action, holding that Transco had not unlawfully abandoned service in violation of section 7(b) of the Act. This conclusion was based on Transco's capacity shortage and the interruptible nature of the relevant contracts and certificates. Petitioners' application for rehearing was denied on October 10, 1980. The Commission characterized the issue of whether Transco was required to subordinate interruptible transportation service to its firm service obligations as a legal-policy question, rather than a factual one. Because no disputed issues of material fact were present, the Commission held that an evidentiary hearing was not required. The Commission also stated that Transco had satisfactorily explained the existence of a capacity shortage necessitating interruption of transportation services provided to petitioners pursuant to the Order No. 533 certificates. Petitioners then sought review in this court.
 
 
 12
 We consider first the Commission's refusal to conduct a formal evidentiary hearing on the issues raised in petitioners' complaints. At the outset we note that the Commission's decision on such matters is generally discretionary. In General Motors Corp. v. FERC, 198 U.S.App.D.C. 206, 613 F.2d 939 (1979), the petitioner challenged the Commission's refusal to conduct a formal hearing into allegations of unreasonable supply curtailments by a pipeline company in violation of section 5(a) of the Act. 15 U.S.C. § 717d(a) (1976). Holding that section 5(a) did not require the Commission to conduct a formal hearing into the lawfulness of a curtailment plan every time a party filed a complaint, we stated:
 
 
 13
 In general, an administrative agency's decision to conduct or not to conduct an investigation is committed to the agency's discretion. City of Chicago v. United States, 396 U.S. 162, 165, 90 S.Ct. 309, 24 L.Ed.2d 340 (1969); Kixmiller v. SEC, 160 U.S.App.D.C. 375, 379, 492 F.2d 641, 645 (D.C.Cir.1974). If an agency considers all the relevant factors so that a court can satisfy itself that the agency has actually exercised its discretion, an agency's decision to refrain from investigating is unreviewable. Union Mechling Corp. v. United States, 185 U.S.App.D.C. 57, 59, 566 F.2d 722, 724 (D.C.Cir.1977).
 
 
 14
 198 U.S.App.D.C. at 211, 613 F.2d at 944. Although the complaint in the case now before us was brought under section 7(b) of the Act, this does not alter the discretionary nature of the Commission's decision to proceed by way of an informal conference. See North Carolina Utilities Comm'n v. FERC, 209 U.S.App.D.C. 400, 403, 653 F.2d 655, 658 n.5 (1981).
 
 
 15
 Our examination of the record persuades us that the Commission properly addressed all the relevant factors. Moreover, the relevant Commission regulation pertaining to the complaint process expressly authorizes the Commission's procedure:
 
 
 16
 If, in the judgment of the Commission, a violation of an act, rule, regulation, or order, administered or issued by this Commission, has been alleged and has not adequately been satisfied it will either invite the parties to an informal conference, set the matter for a formal hearing, or take any other action which in the judgment of the Commission would be appropriate.
 
 
 17
 18 C.F.R. § 1.6(a) (1981). In accordance with this provision the Commission decided to hold an informal conference instead of a formal hearing. We think this decision was not arbitrary or an abuse of discretion.
 
 
 18
 Petitioners contend, however, that a formal hearing was required because their complaints raised a disputed issue of material fact concerning Transco's claim that lack of pipeline capacity required curtailment of transportation services to interruptible service customers. It is established that the Commission need not hold an evidentiary hearing when no issue of material fact is in dispute. Public Service Co. of New Hampshire v. FERC, 195 U.S.App.D.C. 130, 141, 600 F.2d 944, 955, cert. denied, 444 U.S. 990, 100 S.Ct. 520, 63 L.Ed.2d 419 (1979); Citizens for Allegan County, Inc. v. FPC, 134 U.S.App.D.C. 229, 232, 414 F.2d 1125, 1128 (1969). The Commission requested and obtained information from Transco pertaining to its pipeline capacity; this information was also made available to petitioners. It appeared that Transco's capacity was approximately 3150 Mdts per day. Of this amount 2445 Mdts were needed for Transco's flowing supply of gas available to meet customer commitments and another 180 Mdts were required to meet firm transportation commitments. This left 525 Mdts per day of pipeline capacity available to meet miscellaneous commitments, such as storage field service and daily fluctuations in customer requests for pipeline service. Based on these figures Transco calculated that the remaining available pipeline capacity could be fully utilized, thereby necessitating curtailment of transportation services provided under interruptible service contracts. Although it acknowledged that excess capacity might be available on some days during the winter season, Transco maintained it was impractical to provide transportation on such an intermittent basis. Relying on data submitted by Transco, petitioners contend both that actual daily deliveries on some days were less than total capacity and that Transco's actual capacity is more than the 3150 Mdts claimed. These alleged discrepancies were explained by Transco in a letter which accompanied the data. The letter stated:
 
 
 19
 It should be noted that the pipeline deliveries to market shown on this schedule will not necessarily equate to the mainline capacity on any day because deliveries to market reflect not only the throughput but also the change (up or down) in line pack on that day. It should also be noted that the mainline capacity varies from day to day due to a number of factors, including the pattern of deliveries to downstream customers. In that regard, commencing with early December, the figures on the schedule reflect full utilization of Transco's mainline capacity to move gas into the market area under the conditions existing on each day.
 
 
 20
 Letter from Robert G. Hardy, Counsel for Transco, to Morton L. Simons, Counsel for Cerro Wire & Cable Co. et al. (March 21, 1980). After considering the allegations and reviewing the relevant evidence, the Commission concluded to its satisfaction that no actual dispute existed as to Transco's claim of insufficient capacity. Petitioners point to no additional facts which would lead us to question the Commission's conclusion on this issue.
 
 
 21
 Not only is this a highly technical area in which the agency's expertise should be accorded considerable deference, but the standard of review which applies to an agency's decision to forego an evidentiary hearing in the absence of a disputed factual issue is quite narrow. Therefore, we conclude the Commission did not err by refusing to conduct a formal hearing in this case. Despite petitioners' reliance on it for support, our decision in General Motors Corp. v. FERC, 211 U.S.App.D.C. 202, 656 F.2d 791 (1981), does not require a different result here. In the General Motors case we held the Commission had failed to justify its refusal to conduct an evidentiary hearing on the issue of whether a natural gas company's supply situation was adequate to permit a proposed increase in certain service. Here, however, the Commission has relied on its investigation of Transco's pipeline capacity and service commitments to conclude that no factual dispute exists. As we noted in the General Motors case, mere allegations of disputed facts are insufficient to mandate a hearing; petitioners must make an adequate proffer of evidence to support them. Id. at 209, 656 F.2d at 798 n.20. Petitioners did not meet that burden here.
 
 
 22
 We next consider petitioners' contention that Transco committed an unlawful abandonment in violation of section 7(b) by declining to transport petitioners' direct sale gas during the 1979-80 winter season. The Commission rejected this claim on the ground that section 7(b) does not apply to transportation services provided pursuant to the Order No. 533 program. We agree with the Commission's interpretation.
 
 
 23
 Section 7(b) prohibits natural gas companies from abandoning in whole or in part any facilities or service subject to the Commission's jurisdiction without first obtaining the Commission's approval. To approve such an abandonment, the Commission, after due hearing, must find that supply shortages make continuance of service unwarranted or that the abandonment is consistent with public necessity or convenience. Petitioners contend Transco's interruption of service during the winter season constituted a partial abandonment because it "drastically changed the service that had been negotiated and certificated from a year-round service to a summer-only service." (Brief for Petitioners at 20) This argument ignores the plain language of the contracts and certificates pursuant to which Transco undertook to provide transportation services to petitioners. The contracts negotiated by the parties expressly stated that service was to be provided on an interruptible basis only. Thus, petitioners received exactly what they contracted for-transportation services subject to interruption on short notice by Transco. Nor do the certificates issued by the Commission pursuant to the Order No. 533 program which authorized Transco's provision of transportation services to petitioners lend any weight to this argument. Like the contracts, they stated that transportation services would be provided on an interruptible basis only. Transco's action here was consistent with the terms of the contracts and certificates, not contrary to them.
 
 
 24
 Petitioners attempt to circumvent the clear import of these terms by casting this case as an abandonment of service within the reach of section 7(b). This attempt is unavailing. The Order No. 533 program was designed as a stop-gap measure to alleviate the difficulties caused by shortages of natural gas. Order No. 533, 54 F.P.C. 821, 833 (1975); Order No. 2, 14 Fed.Power Serv. (MB) 5-60, 5-69 (1978). Pipeline companies could provide transportation services because shortages of interstate supplies, with attendant delivery curtailments, had created excess pipeline capacity. Service was made interruptible, however, so that pipeline companies could fulfill their firm service obligations in the event shortages eased and excess capacities disappeared. Otherwise, pipeline companies would have been unlikely to participate in the Order No. 533 program, thereby frustrating attempts to deal with the gas shortage. By contending they should be accorded protection under section 7(b), petitioners seek to elevate their status to that of firm service customers. We decline to rewrite the terms of the certificates and contracts to permit such bootstrapping.
 
 
 25
 Contrary to petitioners' assertion, their proposed construction of section 7(b) is not supported by Reynolds Metal Co. v. FPC, 175 U.S.App.D.C. 177, 534 F.2d 379 (1976). In the Reynolds case a natural gas company attempted, by means of a rate filing, to reduce certain certificated service it provided by approximately 62%. The Commission held that such a reduction could be accomplished only through a section 7(b) proceeding, because it entailed a substantial change in the terms of the company's certificated service. This court concurred in the Commission's determination that the permanent reduction in service amounted to an abandonment, stating that "(a)n 'abandonment' within the meaning of section 7(b) occurs whenever a natural gas company permanently reduces a significant portion of a particular service." 175 U.S.App.D.C. at 182, 534 F.2d at 384. (footnote omitted) The transportation services at issue in the Reynolds case however were not certificated on an interruptible basis. Here, Transco obtained interruptible service certificates from the Commission and rendered service in accordance with those certificates. Therefore, Transco did not seek a substantial change in the certificated service and the Reynolds decision is inapposite. We hold that the interruption of transportation services did not constitute an abandonment within the meaning of section 7(b).
 
 
 26
 Petitioners raise two additional arguments which do not merit extended discussion. First, they contend that even if Transco did experience a capacity shortage it was attributable to forcing customers to take additional volumes of gas, which were then sold for low priority uses. Petitioners provide no support for this claim and it is disputed by Transco, which contends that customers totally control how much of their respective entitlements are utilized. As noted previously, mere allegations of disputed facts are insufficient to require a hearing. General Motors Corp. v. FERC, 211 U.S.App.D.C. at 209, 656 F.2d at 798 n.20 (1981). Second, petitioners allege for the first time on this appeal that Transco is operating a "de facto tying arrangement, under which users cannot obtain transportation service from Transco unless they purchase their gas from Transco." (Brief for Petitioners at 23) Regardless of the merits of petitioners' antitrust claims, they cannot be raised here. Section 19(b) of the Natural Gas Act, 15 U.S.C. § 717r(b) (1976), precludes this court from considering any objections to the Commission's order not raised in the application for rehearing. See FPC v. Colorado Interstate Gas Co., 348 U.S. 492, 497-500, 75 S.Ct. 467, 470-472, 99 L.Ed. 583 (1955).
 
 
 27
 We affirm the Commission's orders dismissing petitioners' complaints and denying their request for a rehearing.
 
 
 28
 So ordered.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 294(d) (1976)
 
 
 [1]
 Order No. 533, 54 F.P.C. 821 (1975), Order No. 533-A, 54 F.P.C. 2058 (1975), codified at 18 C.F.R. § 2.79 (1981). The Order No. 533 program was subsequently extended for two years. Order No. 2, 14 Fed.Power Serv. (MB) 5-60 (1978), Order No. 2-A, 15 Fed.Power Serv. (MB) 5-110 (1978). This court has previously upheld the legality of this program. American Public Gas Ass'n v. FERC, 190 U.S.App.D.C. 192, 587 F.2d 1089 (1978). In 1978 Congress amended the Natural Gas Act to expressly authorize the issuance of certificates of public convenience and necessity for the transportation of direct sale gas intended for high priority uses. Public Utility Regulatory Policies Act of 1978, Pub.L.No.95-617, § 608, 92 Stat. 3117, 3173 (1978) (codified at 15 U.S.C. § 717f(c)(2) (Supp. IV 1980))
 
 
 [2]
 Although the Order No. 533 certificates pursuant to which Transco was providing transportation services to petitioners on an interruptible basis have now expired, this case is not moot. The limited duration of the certificates renders it unlikely that a controversy could reach the courts prior to their expiration. See Consumer Federation of America v. FPC, 169 U.S.App.D.C. 116, 120, 515 F.2d 347, 351 (1975), cert. denied, 423 U.S. 906, 96 S.Ct. 208, 46 L.Ed.2d 136 (1976). A case such as this which is "capable of repetition, yet evading review" is not moot. Weinstein v. Bradford, 423 U.S. 147, 148-49, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975); British Caledonian Airways Ltd. v. Bond, --- U.S.App.D.C. ----, ----, 665 F.2d 1153, 1157-58 (1981)
 
 
 [3]
 The complaints were filed pursuant to 18 C.F.R. § 1.6(a) (1981), which states in relevant part:
 Any person, including any State or local commission, complaining of anything done or omitted to be done by any licensee, public utility or natural-gas company in contravention of an act, rule, regulation, or order administered or issued by this Commission, may file a complaint with the Commission .... A copy of the complaint will be forwarded by the Commission to such licensee, public utility or natural-gas company who shall be called upon to satisfy the complaint or to answer the same in writing within 30 days after the date of service of the complaint unless the Commission with or without motion shall prescribe a different time. A copy of the response or answer shall, at the time it is forwarded to the Commission, be served upon the complainant.
 
 
 [4]
 Section 7(b) of the Act states:
 No natural-gas company shall abandon all or any portion of its facilities subject to the jurisdiction of the Commission, or any service rendered by means of such facilities, without the permission and approval of the Commission first had and obtained, after due hearing, and a finding by the Commission that the available supply of natural gas is depleted to the extent that the continuance of service is unwarranted, or that the present or future public convenience or necessity permit such abandonment.
 15 U.S.C. § 717f(b) (1976).