# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 20, 2006         Decided May 12, 2006

No. 04-1374

COLUMBIA GAS TRANSMISSION CORPORATION,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

VIRGINIA NATURAL GAS, INC., ET AL.,
INTERVENORS

Consolidated with
04-1437

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

*Catherine E. Stetson* argued the cause for petitioner Virginia Natural Gas, Inc. With her on the briefs were *Lee A. Alexander*, *Stefan M. Krantz*, *James Howard*, and *C. Todd Piczak*.

*Barbara K. Heffernan* argued the cause for petitioner Columbia Gas Transmission Corporation. With her on the briefs

were *Debra Ann Palmer*, *William S. Lavarco*, *Stephen R. Melton*, and *Kurt L. Krieger*.

*Patrick Y. Lee*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *John S. Moot*, General Counsel, and *Robert H. Solomon*, Solicitor.

*Lee A. Alexander, Catherine E. Stetson, Stefan M. Krnatz, James Howard, C. Todd Piczak* were on the brief for intervenor Virginia Natural Gas, Inc. in support of respondent.

*Barbara K. Heffernan*, *Debra A. Palmer*, *William S. Lavarco*, *Stephen R. Melton*, *Kurt L. Krieger* were on the brief for intervenor Columbia Gas Transmission Corporation in support of respondent.

Before: GINSBURG, *Chief Judge*, and SENTELLE and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*: This case arises out of a mechanical failure that interrupted the provision of liquefied natural gas ("LNG") at a plant owned by Columbia Gas Transmission Corp. ("Columbia") in Chesapeake, Virginia during February 2003. Virginia Natural Gas ("VNG")—one of Columbia's affected customers—filed a complaint before the Federal Energy Regulatory Commission ("FERC" or "the Commission"), seeking damages under the Natural Gas Act, 15 U.S.C. §§ 717-717w ("NGA" or "the Act"). Columbia raised a *force majeure* defense, which FERC rejected. However, the Commission concluded that a state court (not FERC) should measure the extent of Columbia's liability. Both Columbia and VNG petition for review. Because FERC reasonably rejected

Columbia's *force majeure* defense, we deny Columbia's petition. However, because FERC failed to explain its decision to defer to a state court on the remedial phase of these proceedings, we grant VNG's petition in part.

I

Columbia's LNG facility in Chesapeake, Virginia stores natural gas in its liquid state at a temperature of minus 260 degrees Fahrenheit. When a customer (such as VNG) requests gas, the LNG is pumped from Columbia's storage tank to vaporizers, which convert the LNG into gaseous natural gas. The tank-and-pump system is designed to maintain a certain minimum level of LNG inventory—both to ensure that there is enough gas to meet customers' demands and to ensure that the pumps operate effectively. The facility also has a ventilation system, which vents LNG vapor. The vents are essential because the LNG system pumps *liquefied* natural gas, not gaseous natural gas. If LNG vapor enters the pumps, the pumps will malfunction (a problem known as "cavitation").

During a record-cold winter in 1993, Columbia's Chesapeake facility suffered a bout of cavitation. After an investigation, Columbia determined that the cavitation coincided with a spike in LNG demand and a corresponding dip in Columbia's LNG inventory (to the relatively low level of 30 feet). Apparently, when the storage tank's inventory falls, it becomes harder to keep the gas liquefied, which in turn increases the likelihood of vapor entering the pumps and causing cavitation. Pursuant to the advice of an independent consultant, Columbia installed a new ventilation system in July 1997, which was designed to vent LNG vapor more effectively at low inventory levels. Columbia never conducted a "full draw-down" test to determine the precise inventory level at which its new pumps would fail. Nonetheless, the new ventilation system

operated effectively until 2003, when customers' demands for LNG again spiked during another record-cold winter.

On February 19, 2003, Columbia's pumps again malfunctioned. The facility operator noticed that the LNG inventory level had fallen to 23 feet, which is "a record low level for [the Chesapeake] facility." The facility operator further noticed that the LNG pumps were operating in the "start-up" mode, as opposed to the "continuous-run" mode, the latter of which appears to be more effective at venting vapor and might have decreased the risks of cavitation.

On February 20, 2003, Columbia issued a "Notice of Interruption of Service" to its affected customers, including VNG. Under the parties' service tariff, Columbia is obligated to provide VNG with liquefaction, storage, regassification, and delivery of up to 52,090 Dekatherms of LNG per day. However, on account of the cavitation mishap, Columbia reduced VNG's supply of LNG to 25% of its contractual entitlement. Columbia's violation of the terms of its service tariff with VNG lasted 41 days (between February 19 and March 31, 2003). Over the same period, Columbia periodically violated two other agreements that prescribe the minimum pressures at which Columbia must deliver LNG to VNG.

In the aftermath of Columbia's service failure, VNG demanded $37 million in damages—only $7 million of which VNG allegedly incurred during the 41-day period of reduced LNG output from Columbia's Chesapeake plant. The other $30 million in damages reflected "the return of demand charges and contributions in aid of construction paid out over more than a decade." "Demand charges" are "nonrefundable deposit payments required to reserve pipeline capacity." *Amoco Prod. Co. v. Watson*, 410 F.3d 722, 730 (D.C. Cir. 2005). "Contributions in aid of construction" ("CIACs") are fees a

customer pays to a supplier to ensure that a pipeline is built to handle customers' LNG demands, even during "critical periods." After Columbia failed to uphold its end of the bargain, VNG demanded a refund of its pre-2003 expenditures, in addition to the $7 million it claimed it had lost during the 41-day service interruption.

Columbia admitted that it failed to meet its firm-service obligations to VNG under the applicable tariffs. However, Columbia mounted a defense based on the *force majeure* clause in its contract with VNG. The clause reads:

> The term force majeure means an event that creates an inability to serve that *could not be prevented or overcome by the due diligence* of the party claiming force majeure. Such events include, but are not defined by or limited to, acts of God, strikes, lockouts, acts of a public enemy, acts of sabotage, wars, blockades, insurrections, riots, epidemics, landslides, earthquakes, fires, hurricanes, storms, tornadoes, floods, washouts, civil disturbances, explosions, accidents, freezing of wells or pipelines, partial or entire electronic failure . . ., *mechanical or physical failure* that affects the ability to transport gas or operate storage facilities, or the binding order of any court, legislative body, or governmental authority which has been resisted in good faith by all reasonable legal means.

*General Terms & Conditions* ("*GT&C*") § 15.1 (emphases added). Columbia argued that it should not be liable to VNG because the former's breach of its service tariffs was caused by a "mechanical or physical failure" that "could not be prevented or overcome by [Columbia's] due diligence."

FERC rejected Columbia's *force majeure* argument, assigning three reasons. *See Virginia Natural Gas, Inc. v.*

*Columbia Gas Transmission Corp.*, 108 FERC ¶ 61086 (2004) ("*Initial Order*"). First, FERC concluded that Columbia should have performed a "full draw-down" test to verify the plant's performance capabilities after its pumps malfunctioned in 1993. *Id.* at 61441. Second, because Columbia's pumps previously failed when inventory dipped to 30 feet, the gas supplier was on notice that its pumps are the Chesapeake facility's "weak link," which could be broken by a plunge in its LNG inventory. *Id.* at 61442. Third, when its inventory fell to an all-time low of 23 feet, Columbia failed to exercise due diligence by leaving its pumps in the "start-up" mode instead of switching its pumps to the "continuous-run" mode. *Id.* at 61441-42. Nevertheless, FERC declined to award compensatory damages to VNG because the Commission concluded that the company's entitlement to monetary relief (if any) was based on "a violation of the terms of its service agreement with Columbia. A court of law is the most appropriate forum for determining damages due to a breach of contract claim. VNG will therefore need to bring such claims before an appropriate court." *Id.* at 61442.

Both Columbia and VNG filed timely requests for rehearing, both of which FERC denied. *See Virginia Natural Gas, Inc. v. Columbia Gas Transmission Corp.*, 109 FERC ¶ 61090 (2004) ("*Rehearing Order*"). In the *Rehearing Order*, FERC again found that Columbia breached its service obligations to VNG, *id.* at 61379, again rejected Columbia's *force majeure* defense, *id.* at 61384, and again refused to award damages to VNG, *id.* at 61385. Both sides filed timely petitions for review.

II

We need not linger long over Columbia's petition for review because FERC's rejection of the *force majeure* defense was easily supported by "substantial evidence." "The

'substantial evidence' standard requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *FPL Energy Maine Hydro LLC v. FERC*, 287 F.3d 1151, 1160 (D.C. Cir. 2002). Columbia argues that FERC flunks this deferential standard of review because it is "sheer speculation" to assume that Columbia could have done anything to avert the 2003 cavitation-generated system failure. We disagree.

FERC reasonably concluded that cavitation could have been "prevented or overcome by [Columbia's] due diligence." *GT&C* § 15.1. The record includes evidence that (i) the Chesapeake facility experienced cavitation in 1993 when its inventory levels fell to 30 feet; (ii) Columbia concedes inventory levels in 2003 fell *even lower* (to 23 feet); (iii) Columbia did not test its facilities before the 2003 event to determine whether cavitation sets in at a particular inventory level; and (iv) VNG submitted evidence that in the wake of the 2003 event, "Columbia indicated that there was a basic engineering flaw with the plant design which prevented the proper operation of the pumps when the tank liquid level fell beneath approximately 30 feet." Although Columbia vigorously denies this last piece of evidence, and although Columbia denies that low inventory levels are the sole cause of cavitation, there is certainly "more than a scintilla" of evidence that suggests the two are correlated. In fact, Columbia *admits* as much. *See* Joint Appendix 234, ¶ 18 (Aff. of Chesapeake Facility Operator Randy Shivley) (admitting that low inventory levels, amongst other variables, cause cavitation). Thus, even if FERC cannot be sure that Columbia's due diligence *would* have prevented the cavitation, the Commission nonetheless reasonably concluded that cavitation "*could* [have been] prevented or overcome by [Columbia's] due diligence." *GT&C* § 15.1 (emphasis added).

In the final analysis, there is some uncertainty surrounding the cause of Columbia's cavitation, and Columbia might be correct that "operation in continuous run mode would [not] have, in fact, made a different [*sic*]." Reply Br. at 9. "The question we must answer, however, is not whether record evidence supports [Columbia's] version of events, but whether it supports FERC's." *Florida Mun. Power Agency v. FERC*, 315 F.3d 362, 368 (D.C. Cir. 2003). The record supports FERC's conclusion that Columbia could have "prevented or overcome" the pump failure. We therefore deny Columbia's petition for review.

III

A

VNG's petition for review has two parts, one of which is essentially frivolous. VNG argues that Columbia unlawfully "abandoned" its service obligations, in violation of NGA § 7(b), 15 U.S.C. § 717f(b), when it temporarily cut back its LNG operations at the Chesapeake plant. However, our precedents make it abundantly clear that "[a]n 'abandonment' within the meaning of section 7(b) occurs whenever a natural gas company *permanently* reduces a significant portion of a particular service." *Reynolds Metals Co. v. FPC*, 534 F.2d 379, 384 (D.C. Cir. 1976) (emphasis added); *see also United Distrib. Cos. v. FERC*, 88 F.3d 1105, 1134-35 (D.C. Cir. 1996) (same). VNG never suggests that Columbia's service interruption was "permanent": It is undisputed that Columbia's services returned to normal at the end of March 2003. Unsurprisingly, VNG points to no case that suggests that a temporary service interruption constitutes an "abandonment" under NGA § 7. We easily reject VNG's abandonment claim.

9

B

The second part of VNG's petition is meatier. VNG claims that the Commission unlawfully refused to award a monetary remedy after finding that Columbia breached its service obligations. In a footnote to the *Initial Order*, FERC justified its remedial (non-)decision by noting that VNG's request for relief includes "remedies beyond those typically contemplated by the Commission." 108 FERC at 61442 n.24. However, after VNG petitioned for rehearing and asked FERC to clarify its footnote, the Commission did not do so. *See Rehearing Order*, 109 FERC at 61380-81. After noting that it *could* exercise its remedial authority under the NGA, FERC explained simply that "the interests of efficiency and consistency would be best served by having all of VNG's various claims heard and decided in one place and at one time, namely, before a [state] court competent to award or reject each of the proposed the [*sic*] remedies." *Id.* at 61381. VNG argues that FERC's failure to explain its abdication of its remedial authority is arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A); *Sithe/Indep. Power Partners, L.P. v. FERC*, 165 F.3d 944, 948 (D.C. Cir. 1999). We agree.

Nowhere—not in the *Initial Order*, not in the *Rehearing Order*, and not in its briefs—does FERC explain its conclusion that VNG's requested relief includes "remedies beyond those typically contemplated by the Commission." 108 FERC at 61442 n.24. To be sure, FERC notes that its remedial authority, even "exercised at its zenith, does not extend to imposing civil penalties or reparations." *Rehearing Order*, 109 FERC at 61380 & nn.6-7. However, FERC does not explain *how* or *why* VNG's requested relief includes verboten "civil penalties" or "reparations."

Assuming (as FERC does) that Columbia violated the NGA,[1] at least *some* of VNG's damage demands appear to fall within FERC's understanding of its remedial authority. *See, e.g.*, *Sunoco v. Transco*, 111 FERC ¶ 61400, 2005 WL 1414290, *7 (June 16, 2005) (requiring an offending pipeline to pay consequential damages for its breach of a service agreement). Of course, after considering VNG's demands on the merits, FERC might conclude that VNG's claims are overbroad. However, that possibility does not absolve FERC from making a choice and explaining it. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (An agency must "examine the relevant data and articulate . . . a rational connection between the facts found and the choice made." (internal quotation marks and citation omitted)); *SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947) ("It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive."); *Commc'ns & Control, Inc. v. FCC*, 374 F.3d 1329, 1335-36 (D.C. Cir. 2004) (holding a conclusion supported "with *no* explanation" is the epitome of "arbitrary and capricious" decisionmaking (emphasis in original)).

---

[1] Without explaining which provision of the NGA Columbia violated, FERC notes that "compensation for Columbia's LNG service shortfalls may be awarded by the Commission pursuant to NGA section 16 . . . ." *Rehearing Order*, 109 FERC at 61381. Because the Commission has remedial authority under § 16 only if Columbia violated one of the NGA's substantive provisions, *see New England Power Co. v. FPC*, 467 F.2d 425, 430-31 (D.C. Cir. 1972), *aff'd*, 415 U.S. 345 (1974), the Commission's assertion of its § 16 power necessarily implies an independent violation of the NGA. We express no opinion on this issue. On remand, FERC should make plain the basis for its authority to award remedies (if any).

If part of VNG's damage demand is beyond the Commission's remedial authority, FERC should have so ruled —or at least should have explained why it would defer in this case even if the demand were within its authority. *Cf. Arkansas Louisiana Gas Co. v. Hall*, 7 FERC ¶ 61175, 61321-22 (1975) (concluding FERC should defer to pending remedial proceedings in a state court). Given that the Commission has suggested that VNG's demands straddle the remediable-unremediable border, *see, e.g.*, *Rehearing Order*, 109 FERC at 61381, it is incumbent upon the Commission to explain which fall where. A tight-lipped punt will not do.

Finally, we hasten to emphasize one limit on today's decision. VNG argues that "once a violation of the NGA has been found, the Commission must take action to remedy the violation—the Commission's [remedial] duty is 'mandatory.'" We need not and do not go so far. In addition to the fact that it is unclear whether Columbia violated the NGA, *see supra* note 1, it is also irrelevant for present purposes whether FERC *must* remedy every NGA violation. The Commission's failure to explain itself renders its decision in this case arbitrary and capricious.

IV

For the reasons stated above, Columbia's petition for review is denied, and VNG's petition for review is granted in part and denied in part.

*So ordered.*